19-3820 United States v. Birt, Mr. Ulrich and Mr. Behe. Mr. Ulrich? Good morning. May it please the Court, Frederick Ulrich. I'm an Assistant Federal Public Defender in the Middle District of Pennsylvania and I represent the appellant, Jim Albert. I'd like to reserve two minutes of my time for rebuttal. You sure can. This case presents, in our view, a straightforward application of the plain language of Section 404A of the First Step Act. And that section states that a covered offense includes a violation of a criminal statute for which the penalties were modified by Section 2 of the Fair Sentencing Act. Section 2 here modified the penalties that applied to violations of Section 841. Yeah, but it was 841B1A and B1A Roman 3, or little 3, three lies, and B, three little lies. But there was no change at all made to C, was there? Our view is that there was a change made to C for two reasons. One, we think the focus should be a little bit more in a categorical fashion, much like the First Circuit approached the issue in United States v. Smith. In this way, you'd simply look to see whether the individual committed a violation of Section 841A involving crack cocaine and were the penalties in B modified. They were. B says penalties, but when you look, there's two elements in B, amount and identity. So it's more than just penalties, right? Well, it has to be identity because the Fair Sentencing Act only addressed the disparity between crack and powder cocaine. So that's where the limitation comes in on that score. In our view, though, stepping back from it, you'd simply look at the statutory framework as a whole to see whether the penalties in B were modified. They were. But even if you accepted the government and the district court's more narrow focus and looked to simply whether the subsection that applied to Mr. Berth was altered or modified, he'd still reach the same conclusion. And that's because of Section C, B1C, that is. It is defined in the statutory text by what subsections A and B do not cover. The penalty provisions there are inextricably linked. You say it's defined that way, but the reality is you could have any amount of drugs, and if the prosecution chose to charge you under C, it's irrelevant, right? You could theoretically have been arrested with, you know, Carlos Lederer levels of tons of cocaine on you, and if the government decided, well, we're going to charge this under B1C, that would be the operative provision. Not what could have happened, but what did happen in the charging decision, correct? I don't believe that that would be operative in terms of eligibility. I think that Your Honor's focus would better inform the district court's decision-making on the back end in 404B as to whether this guy is entitled to a reduction. And the fact that a charge bargain was reached and the government chose for purposes of a litigation strategy or other reasons. In the first instance, I'm just trying to figure out the analytical frame. And the analytical frame you seem to be saying is because the B1C can only be understood in contradistinction to B1A3 and B1B3. That seems to be your argument, that because B1A3 and B1B3 did change, that means that even though nothing in B1C was changed as a matter of verbiage, it necessarily changed because it can only be understood in contradistinction to those first two. That's the pitch I understand you to be making, right? That's one of the pitches. I think I'd also stick to my earlier argument as well, the one that the First Circuit adopted. For eligibility purposes, you'd simply look to see whether you had a charge under 841A. Mr. Burke did. Did it involve crack cocaine? It did. Were the penalties generally in 841B1 modified? And the answer, again, would be yes. Your primary argument is you were charged under B1A, ergo everything happened, everything was changed because it's all under B1A. That's the argument? That would be one argument that we would advance. It's just simply an eligibility determination. Well, answer the Alene response to that then, right? The First Circuit wasn't impressed by it, but maybe we'll be more impressed. What's wrong with the government's position as articulated in Smith that, wait a second, if that were what Congress were doing, it would be walking right into a constitutional trap because the operative charge is not B1A. The operative charge is the amounts charged because they're penalty-driven, and that has constitutional ramifications. Well, I guess my first response is that, one, the 1986 Act was in place long before apprending Alene. Two, the Fair Sentencing Act was enacted well before Alene. Three, the – Yeah, but the Fair Sentencing Act and the First Step Act were not enacted long before Alene, so aren't we supposed to be thinking that Congress is legislating against the backdrop of constitutional decisions by the Supreme Court? In the normal course, but actually the Fair Sentencing Act was enacted in 2010 and Alene was handed down in 2013, so there was a fair amount of time before Alene came down. But in general, all Alene and Apprendi did was their constitutional rules of procedure that require the government in certain circumstances to prove things are going to alter either a mandatory minimum or a statutory maximum. What year was Apprendi? 2000. Right. And isn't Apprendi the foundation for Alene? In short, wasn't that out there well before the Fair Sentencing Act? It was, but Apprendi did not address the mandatory minimum issues that existed within Section 841B1A and B1B. So in our view, I mean, these decisions, they simply changed for constitutional procedural issues, the manner in which the government has to prove an offense. It doesn't change the statutory text or framework, though. Let's talk about the text then. You pointed us to 404A, which has the clause, the statutory penalties for which were modified by Section 2. And then if we look at the language of Section 2, the text only modifies the amounts for A weight and B weight crack cocaine. That's it. So you're asking us to do something outside the text, correct? We would not. No, that's not what we're asking the court to do. This is simply an eligibility determination. There was no reason for Congress to reach down and alter any drug weights in subsection C because the statutory text in subsection C accepts as provided in subparagraphs A and B. So they're necessarily linked as a matter of statutory text to begin with. And one change in the threshold or modification of the drug quantity affects the others to the same degree. But the penalties in A's in subsection C were not affected at all by the Fair Sentencing Act. It was always a 0 to 20. C was never changed, correct? None of the statutory penalties were changed in any section. Well, the mandatory minimum, but I stand corrected in terms of the precision of my comment. The mandatory minimum trigger in A and B was affected by the amendment, correct? That is correct. Okay, and therefore the penalty was changed, what you would face. Well, I think the scope of the statute in terms of who would fall within the provision, assuming it was charged, was changed. So with that qualification, I believe that's how we would look at it. And it also changed the scope of subsection C in the same way. And we're only talking about an eligibility determination here. It's certainly well within the court's prerogative to say, well, this guy got a break in terms of the charge he received, or I don't think that necessarily his particular case warrants a reduction. And as the First Circuit pointed out in Smith, the amounts that statutorily anchor the scope of a section have some impact on the judge's exercise of discretion. I don't think anyone is going to disagree with the fact that once you get past the eligibility gate, there's some discretion given to the sentencing judge. But you've characterized it's just an eligibility requirement. But it's a requirement, and that's why our questions have been focused there. So I gather you're asking us, do you think Smith either adopts Smith in its view that covered offenses are talking about 841A1, the possession with intent to distribute provision, whose penalties were impacted, and those penalties are in subsection B, that's the Smith analysis, or you're asking us to, even not considering Smith, view subsection C as having been modified because it broadens the number of individuals or type of amounts that could be eligible for a sentence without a mandatory minimum. Do I understand those are the two thought trees you'd like us to consider adopting? Yes, and I do think, and maybe I misheard you on the connection here, but I do think Smith did address the secondary argument as to whether subsection C was modified, in the language that even if we accepted the government's position. Got it. Thank you. And for what we haven't received an opinion yet, obviously, from the Fourth Circuit, but it appears that they're headed in the same direction based on their order in Woodson. And here, what's happened is the district court and the government have focused primarily on whether mandatory minimums or statutory maximums were changed in the guidelines, and those concerns, in our view, are better addressed on the back end in terms of the court's exercise of discretion, and that's not going to open up a floodgate or anything like that. Most of these cases have already gone through, for that matter, and there's only a handful of them really left that would be impacted, and that's what we're asking from Mr. Burt. And this application, in our view, is consistent with both the purpose of the Fair Sentencing Act, the comments of the individual senators, and the fact that the – Well, hold on when you say it's consistent with the purpose of the Fair Sentencing Act. And, indeed, you've got support for that, again, in Smith, where they say, you know, they think it's most unlikely that Congress intended to address small quantities of crack cocaine. But why isn't it just as logical to say Congress intended to address disparities when large amounts were in play, because that's where the disparities were going to reach the most significant and serious differences, and they weren't as concerned about the smaller – they weren't as concerned about making people eligible for changes at smaller amounts because maybe they thought that's already handled. Of course, they're already dealing with that at the small amount level. What's the policy – what's the thinking that says it has to be the case that Congress meant to get to see, because otherwise it doesn't make sense? Well, it doesn't seem that there's any indication that Congress decided to draw a line. If I was going to suggest a way they could have done it, very simply, is this in subsection 404C, where it says you're not entitled to a reduction if you've already, you know, received one in accordance with Sections 2 and 3. All they would have had to do to take up to see people is add 2, 3, and Section 8. And Section 8 was the provision in the Fair Sentencing Act that directed the Sentencing Commission to alter the guidelines. And reduce the threshold. Right. It could have done all kinds of things, Mr. Ulrich. That's the point. And that's the thing that we're wrestling with now right with you, which is they didn't appear to do anything to see. So shouldn't we say, well, if they meant to do it, they knew how to do it, and they didn't say anything about see. What they did say very clearly applies to the A and the B subsections, but not to C. That's why I'm asking you the question about the Smith rationale where you seem to be saying it doesn't make sense and Smith seems to be saying it doesn't make sense. I'm trying to find why are you suggesting that it's illogical for Congress to have deliberately chosen to just leave C out of it? For one, the disparity that existed within the 100 to 1 disparity, which existed with respect to powder and crack cocaine, existed all the way through these sections. It wasn't just confined to subsections A and B. And it was driven both by statutory benchmarks as well as the guidelines. Yeah, but those other ones have mandatory minimums. C doesn't, and the court is always free to depart or to vary from the guidelines. So why isn't it just as logical to think Congress thought there's a fix in place already there? We don't have to do anything to C because district court judges can vary according to their discretion. After you answer that question, then we'll go to Mr. Behe. I'm sorry. I'm taking a little bit longer than expected. No, no problem. They could have varied, except for in Mr. Burt's case, he was sentenced under the mandatory guidelines. So there was no mechanism really in place for a variance in his case. And for most of these guys, they were sentenced a long time ago. So the application of Booker remedies in terms of allowing a variance may not have applied to a lot of them. That's why we're here. This is quite a bit in the past that these guys were sentenced. And secondly, sentences in most of these cases were driven not so much by the mandatory minimum, unless they received the mandatory life sentence, but by the guidelines themselves. So for all these reasons, we're simply asking that the court remand and allow the court to consider whether exercising discretion is appropriate in this particular case. Thank you. All right. Thank you. And then, Judge Schwartz, if you have any questions, we'll get you up first on rebuttal then. I'm good. Thank you. Okay. Mr. Behe? Good morning, Your Honors. Listening to Mr. Olt's argument and the questions that the court put to him, very good questions, very good argument, I compare that to what is a very straightforward statutory language here of the First Step Act. You look at the Smith decision, it took 15, 20 pages to interpret what was a very straightforward act of Congress. It came out exactly against your position in every particular case. And it looks like Woodson's going to go that way, and my guess is that Woodson's going to be precedential. So while you've got Duggan, which is the Fourth Circuit, which supposedly went the other way but not precedential, you've got Martinez in the Tenth Circuit, which supposedly went the other way, not precedential, and Foley in the Eleventh Circuit, which went your way, not precedential. You're likely to have two precedential opinions lined up directly against you, so it's an uphill fight. I'd also add to that non-precedentialist Willis out of the Sixth Circuit that was decided in February of 2020. That's the same circuit that Bemis came out of. Bemis was in November, and then Willis, several months later, addressed exactly the issue that is here in a non-precedential opinion and said you aren't eligible if it's a B1C conviction. And I asked the court, and all of the questions go right to this. If Section 2 was in effect at the time that Burt pled guilty and was sentenced, would his sentence statutory penalty be any different than it would have been had he been convicted and sentenced after August of 2010? And the answer is categorically no. There was no mandatory minimum sentence that applied to a B1C offense. As a matter of fact, that is exactly why prosecutors were charged that way, because they were required to. If you wanted a mandatory minimum sentence, you had to charge five grams or more, or you had to charge 50 grams or more, or you could not get the mandatory minimum. Everything else was not subject to a mandatory minimum. You either said it was less than five grams, or you discharged an unspecified amount of crack cocaine. So an individual like Burt, who was sentenced for an unspecified amount of crack cocaine, is in a procedurally better posture, if you follow Mr. Ulrich's argument, than an individual who was convicted and sentenced for an unspecified amount of crack cocaine after the Fair Sentencing Act, because Burt is trying to get his foot back in the district court so he can have his determination that he was a career offender reexamined. But a person who was not subject to the mandatory minimum, or subject to the exact same penalties as Burt after the Fair Sentencing Act, doesn't get that chance. So a career offender in Burt's position is arguing that he should have the opportunity to go back into the court, not because his sentence was reduced by the Fair Sentencing Act, made retroactive by the First Step Act, but simply so that he can have his career offender guidelines reconsidered. That's what he indicated in his letter to the court that asked us about the effect of the means. Well, Mr. Beeney, why don't you take on directly the argument that we're hearing from Mr. Ulrich, and which was embraced by the First Circuit and Smith, that the Congress intended this to happen and affect everything that's done under the 841A, because that's the way the statute itself is framed. 841A is the criminal statute that you're violating, and that B is just the penalties. So it necessarily is the case that B1C is swept up in it. What's wrong with that logic? Well, first off, the difficulty I've had in examining Smith and some of the other cases or the arguments that are made regarding this is the offense and that is the penalty and they have to be separate is my understanding of what a criminal statute is doesn't divorce the conduct from the penalty. In this particular case, the penalty is what drives the offense. And I think what the First Circuit did respectfully is they went down a track that they realized got off or they got off the rails by going down a particular track, because if you look at footnote 5, that explains where logically their reasoning would go, because the footnote says, a more difficult question would be whether a violation of 841A1 involving only a controlled substance other than crack would also be considered a covered offense. Since Smith was convicted for distributing crack, we don't need to decide that issue. Well, you know, somebody's going to have to decide it, and if this court adopts a Smith position, then there's no saying that somebody who was sentenced for a heroin offense or a methamphetamine offense couldn't come back in and say, well, you know, the statutory penalty for 841 was modified, even though it was modified just for crack, it was still modified, and Congress intended that, by its language, that any modification would allow anybody to come back in for an 841 offense. Okay, let's say we agreed with you. For the sake of argument, we thought, yeah, that approach, that 840, it modified 841A1, so it modified everything. We didn't buy that. But that then put us on the second of Mr. Ulrich's proposed decision trees and says to us, look, B1C had to get modified because it can only be understood with respect to B1A and B1B, and you change B1A and you change B1C, you necessarily change, you change B1C when you change those first two. What's the answer to that logic, which is it's a whole, you've got a whole pie, it's got A, B, and C in it, and when you change A and B, you have to change C? Well, I think Mr. Ulrich is looking at it, he keeps using the word back end, I say reverse. The language of the First Step Act deals about sentence modifications that reduce an individual's potential penalty. And in this case, B1C is essentially the catch-all provision. There isn't any, as Your Honor I think mentioned earlier, you could have Carlos Lederer or, you know, two kilos or five kilos cracked, but if you were charged with an offense where it was unspecified, then it did not kick in any mandatory minimum. So the increase in the level of drugs that would make you eligible for a mandatory minimum sentence is the modification that was made by the First Step Act. Nothing changed the fact that under B1C, if you were not eligible for a mandatory minimum, then you didn't get a mandatory minimum. And as Your Honor has pointed out, if you look at the text of the amendments made by the Fair Sentencing Act, B1C was completely unchanged. The only strikes that were made were to the 50-gram amount and the 280 grams inserted. Yeah, but that doesn't seem to me to be addressing the argument they're making. I take their position to be, and the Smith case position to be, yeah, the words were not changed, but that doesn't mean that the effect of the statute was not changed. It was changed. It was modified. By changing A and B, you did modify C, even if the verbiage remained unchanged. That's the argument I'm trying to get you to address directly. Is there a response to that? Yes, my response to that is if you look at Section B of the First Step Act, it talks about a court having the ability to reduce a sentence. That, in fact, is what defines everything else. A court that imposed a sentence for a covered offense may impose a reduced sentence as if Section 2 were in effect. Well, if Section 2 were in effect, you could not have imposed or you cannot impose a reduced sentence for a B1C offense. That is the answer to Mr. Ulrich's claim that, well, it's modified. Well, no, it wasn't modified because under Section B, the court cannot reduce a sentence for a B1C, which means that it wasn't modified. The modification refers to the eligibility for the five-year mandatory and the ten-year mandatory sentence. And to go back on the point in Smith where they talk about Congress couldn't have intended this and it's unintended results, you have a situation right here where the amount of crack cocaine, well, if you were sentenced to just five years or ten years, that time most likely would have expired. But these cases all seem to be connected with individuals who have prior criminal convictions under 851 where information were filed and they were getting increased sentences for that or they were career offenders. And that's what drove their sentencing range as high as it did. So I don't think that just because somebody like Bert had a conviction for a crack offense that was less than five grams somehow meant that he was not covered or not intended. I think Congress intended this apply only to individuals with the mandatory minimum because their statutory maximums and guideline ranges were exponentially larger because of that distinction. So in this particular case, my view is nothing changed, period. If Bert was sentenced before or after the First Sentencing Act because he was convicted of an offense that did not carry a mandatory minimum, it was an unspecified amount, that nothing would have changed. And that was the whole purpose of the First Step Act, to give those individuals who did not get the benefit of the sentencing reduction under the Fair Sentencing Act a shot at it. So if Bert's able to come in, an individual who was sentenced after the Fair Sentencing Act in the same situation is denied that opportunity. And I don't think Congress intended that at all. And the interpretation that I'm urging in the court is pretty straightforward. And I know it's their district courts, and that's fine. And I know there are unprecedented opinions in other circuits, and that's fine. But they're instructive, and they can be considered by the court, and I urge the court to do that here as well. Thank you. Judge Schwartz, do you have any questions? My questions have been answered. Thank you. All right. Judge Jordan, anything further? No, thanks. All right. Thank you. We'll go back from Mr. Ulrich then on rebuttal. And, Judge Schwartz, you get the first question. I'm actually good. The question was answered, but thank you. Okay. Thank you. So I have one question. I have one question. It seems that the purpose of the First Step Act is to make changes to the statutory sentencing ranges that were brought by the Fair Sentencing Act to make them retroactive. So if that is the purpose, how is it at all furthered by a sentencing reduction in a case like Burt's where the sentencing range available to the district court was exactly the same before the Fair Sentencing Act as after? Well, certainly the district court judge could take that into consideration and decide under the discretion of 404B to not modify the section. But I would push back on that just a little bit because certainly the commentary from the individual senators who were sponsors of this bill suggests pretty clearly that they intended a fairly broad application of these remedial measures. Isn't the Supreme Court's case law on this pretty clear that it doesn't matter what some individual congressperson or senator says? What matters is the text of the statute that they actually enact. That's correct. And to the extent that you would even have so-called legislative history, it would be like a joint conference report or perhaps a committee report, but statements on the floor of particular senators or congresspersons, some of whom aren't even involved in the drafting of the First Step Act, gets almost no deference. And that's correct. But your question was asking me to... It seems like to the extent that you deal with something other than text, and clearly text is paramount, it seems that it changes statutory sentencing ranges. And the statutory sentencing range available to the district court was exactly the same before the Fair Sentencing Act as after for Burt. Well, that is correct, except that the text of the statute says the penalties were modified. And our position is the penalties in Subsection B were modified. And even if you look further down into Subsection B1C, the penalties were modified because the range of exposure under Subsection C was raised and altered as a result of the amendments or modifications to Subsection A. But it was raised in a way that benefited the defendants, right? It gives defendants who otherwise would have faked the mandatory minimums the benefit of no mandatory minimums. That is correct. More people would fall into those ranges. And, again, if the district court wishes to exercise their discretion to deny a motion for that reason, that's perfectly acceptable. It makes more sense to allow it to work that way as opposed to coming up with some sort of arbitrary eligibility threshold that everybody has to meet. And to push back a little bit on Mr. Behe's statement that none of that is necessary. Before you do that, I think we have a question from Judge Schwartz. Yes, I have two. One has to do with Subsection B. Your adversary mentioned 404, defendant's previously sentenced, saying a court that imposed a covered offense may impose a reduced sentence as if Section 2 were in effect. If Section 2 were in effect, your client wouldn't be affected by it because Section 2 dealt with mandatory minimum triggers and your client was sentenced under a subsection that had no mandatory minimums. So he's not the kind that would get a reduced sentence, correct? That's a one-on-one question. Go ahead for a second. It's under Subsection B that would inform the judge's discretion to a certain degree, and a judge may decide, consistent with your question, to not reduce Mr. Burt's sentence. But that's different than an eligibility determination. And, actually, if the Fair Sentencing Act had been in effect, Mr. Burt's guideline range would have been different. But, Guy, we're not talking about guidelines. We're talking about statutory guidelines. As I understand from the case law, this is about whether the statute changed, not whether the guidelines would be affected. It is. I'm simply responding to Mr. Behe's suggestion that nothing would have been different for Mr. Burt. It certainly would have been different. If he were to receive the benefit of this section, he wouldn't be subject to a mandatory guideline regime. So that would be different. If I could ask you one other question, I thank Judge Ambrose for allowing me to do so. Go ahead. The adversary brought up a footnote in Smith, footnote 5. And, essentially, what that footnote was flagging is we know our analytical approach here could easily apply to other amounts and types of drugs. That's not what the Fair Sentencing Act Section 2 was doing. The Fair Sentencing Act Section 2 was only changing amounts, triggering mandatory minimums for crack. So how do you get around the fact that the analysis in Smith goes far broader than what Section 2 would contemplate? Well, my response would be that when I read that footnote, I frankly did not understand it. Because if you're talking about Sections 2 and 3 of the Fair Sentencing Act, the only modification they're making is to the penalties associated with crack cocaine. Yeah, but the logic is there. That's the problem. The First Circuit is recognizing the hole in their logic, which is if you go with this 841A modifies everything, then it modifies everything. And, you know, that would apply to heroin, too. But we'll think about that another day. So what's hard to understand about that? They've identified a problem in their logic, haven't they? Well, they've identified a problem that doesn't really exist in these cases because the limiting language in Section 404 and in the Fair Sentencing Act is all directed towards crack cocaine offenses, not heroin, not powder cocaine, not methamphetamine or any of these other substances. So to bring back to the point we made earlier that if you even accept that we're supposed to look at the individual subsections for these penalties, again, as the First Circuit recognized, subsection C was modified. It doesn't require a lot to reach that determination because it's simply a modification,  and for these reasons, as we suggested earlier, we believe Mr. Burke's case should be sent back for a determination of whether the court wishes to exercise its discretion. All right. Thank you very much. Thank you to both counsel. Very well presented arguments, and we'll take the matter under advisement.